IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIFFANY HAYNES,

       Plaintiff,                No. CIV S-03-497 JFM (TEMP)

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.         ORDER

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand for payment of benefits.

/////

/////

/////

/////

I. Factual and Procedural Background

In a decision dated October 22, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of vasodepressor syncope/presyncope and migraine headaches disorder but these impairments do not meet or medically equal a listed impairment; plaintiff is not fully credible; plaintiff can perform medium work with the restriction that she cannot work around heights, with dangerous machinery, cannot drive and cannot swim; plaintiff can perform her past relevant work as an administrative clerk; and plaintiff is not disabled. Administrative Transcript ("AT") 21.

-----

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1    Plaintiff contends the ALJ improperly characterized the medical record and rejected the opinions

2    of examining physicians and disregarded third party laywitness evidence.[2]

3    II.  Standard of Review

4              The court reviews the Commissioner's decision to determine whether (1) it is

5    based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

6    record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

7    Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

8    Substantial evidence means more than a mere scintilla of evidence, but less than a

9    preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

10   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a

11   reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

12   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

13   197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler,

14   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

15   detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

16   1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of

17   supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

18   substantial evidence supports the administrative findings, or if there is conflicting evidence

19   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

20   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

21   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

22   1335, 1338 (9th Cir. 1988).

23   _____

24         [2] Plaintiff also contends the ALJ improperly discredited her subjective complaints and
     disregarded the testimony of the vocational expert. In light of the ALJ's errors with respect to
25   the medical record and laywitness evidence, which errors require remand of this matter, the court
     need not reach plaintiff's arguments with respect to the credibility analysis of plaintiff's
26   testimony and the vocational expert.

1    III. Analysis

2        A. Medical Opinions

3            Plaintiff contends the ALJ mischaracterized the medical record and improperly
4    rejected the opinions of examining neurologist Dr. McIntire, examining neurologist Dr. Jordan,
5    and examining psychiatrist and neurologist Dr. Straehley. The weight given to medical opinions
6    depends in part on whether they are proffered by treating, examining, or non-examining
7    professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is
8    given to the opinion of a treating professional, who has a greater opportunity to know and
9    observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

10           To evaluate whether an ALJ properly rejected a medical opinion, in addition to
11   considering its source, the court considers whether (1) contradictory opinions are in the record,
12   and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
13   treating or examining medical professional only for "clear and convincing" reasons. Lester, 81
14   F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be
15   rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at
16   830. While a treating professional's opinion generally is accorded superior weight, if it is
17   contradicted by a supported examining professional's opinion (e.g., supported by different
18   independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d
19   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In
20   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical
21   findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,
22   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a
23   non-examining professional, without other evidence, is insufficient to reject the opinion of a
24   treating or examining professional. Lester, 81 F.3d at 831.

25           Plaintiff contends the ALJ improperly mischaracterized the evidence by
26   minimizing the number of syncopal episodes in the medical record. The ALJ stated that there

4

was only one documented syncopal episode during a tilt test and that fainting episodes were observed by medical personnel on only one or two occasions.  AT 15, 18, 318 (on tilt table test, seven minutes into 80-degree tilt, plaintiff experienced syncopal episode associated with drop in heart rate to low 40s and drop in blood pressure to 60/40).  It appears that in summarizing the medical evidence, the ALJ cited only to those portions of the record which supported his conclusion that plaintiff's reports of multiple syncopal episodes were not credible. The record, however, documents other syncopal episodes.  AT 216 (plaintiff hospitalized during pregnancy for exacerbation of vasodepressor syncopal episodes; hospitalization discharge summary noted several episodes of syncope); 215 (four episodes of lightheadedness, faintness, during 24 hours of Holter monitor with twenty premature atrial ectopic beats); 320 (during monitoring, plaintiff had five syncopal episodes associated with variation in sinus rhythm).  Although the ALJ is not required to discuss every test result, this mischaracterization of the medical record undermines the legitimacy of the reasons given by the ALJ for rejecting the opinions of the examining physicians.

Dr. McIntire examined plaintiff on May 26, 2002 and reviewed her medical records.  AT 324-327.  He opined that the syncopal episodes would disrupt plaintiff's ability to carry out instructions or communicate with coworkers. AT 327.  The ALJ rejected Dr. McIntire's assessed limitations on the sole basis that the record did not support the frequency of syncopal episodes reported by plaintiff.  AT 18.  Dr. Jordan examined plaintiff on July 6, 2004 and also reviewed plaintiff's medical records.  AT 332-338.  She opined that plaintiff was limited in her ability to be up and about and move about quickly.  AT 337.  This limitation was rejected by the ALJ on the basis that plaintiff had not reported problems with a change in posture.  AT 18. Upon review of the entire record, and particularly in light of the ALJ's disregard of the numerous syncopal episodes noted in the medical record, the court finds the ALJ's reasons for rejecting Dr. McIntire's and Dr. Jordan's opinions do not meet the standards set forth above.

Dr. Straehly, who examined plaintiff on December 4, 2000, opined similarly to Dr.

5

1    McIntire with respect to functional limitations attributable to plaintiff's syncopal episodes. AT

2    282-285. He opined that plaintiff would be able to understand and carry out complicated

3    instructions only for unpredictable and time-limited intervals. AT 285. In summarizing Dr.

4    Straehly's report, the ALJ completely omitted this limitation and did not even address whether

5    any weight was accorded Dr. Straehly's opinion or set forth any reasons for rejecting this opinion.

6    AT 16, 18. Under these circumstances, the ALJ's decision cannot be upheld.

7        B. Laywitness Evidence

8        Plaintiff further contends the ALJ improperly disregarded the third party report of

9    her boyfriend. AT 184-189. "[L]ay witness testimony as to a claimant's symptoms or how an

10   impairment affects ability to work is competent evidence, and therefore cannot be disregarded

11   without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v.

12   Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe

13   a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ

14   wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to

15   each witness." Dodrill, 12 F.3d at 919; see also Stout v. Commissioner SSA, 454 F.3d 1050,

16   1056 ((9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to

17   plaintiff, court cannot consider error to be harmless unless it can confidently conclude no

18   reasonable ALJ, when fully crediting testimony, could have reached different disability

19   determination).

20       The boyfriend reported plaintiff always needs someone around her because of her

21   medical condition, did not go shopping unless her mother or boyfriend was with her, and that after

22   an episode, plaintiff was nonfunctional for thirty minutes to an hour. AT 185, 188.

23   The ALJ failed to discuss, or even acknowledge, this third party report. The report is

24   corroborative evidence of plaintiff's disabling syncopal episodes, which is at the heart of

25   plaintiff's disability claim. If the boyfriend's report was fully credited, a reasonable ALJ could

26   have reached a different disability determination. The court cannot, therefore, find this omission

6

1    to be harmless error.

2         C. Conclusion

3              The remaining question is whether to remand this case to the ALJ or to order the

4    payment of benefits. "The decision whether to remand the case for additional evidence or simply

5    to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th

6    Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful

7    purpose would be served by further administrative proceedings or where the record has been

8    thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399

9    (9th Cir. 1987); see also Benecke v. Barnhart, 340 F.3d 587, 593 (9th Cir. 2004).

10             Plaintiff alleges an onset date of disability of November 18, 1999, almost twelve

11   years ago. On January 16, 2004, this matter was initially remanded under sentence six because the

12   Commissioner could not locate the claim file. Dkt. no. 11. A new hearing was held at the

13   administrative level and the action was reopened in the District Court on June 25, 2010, over a

14   decade after plaintiff alleges she became disabled. In the decision at issue here, the ALJ did not

15   set forth sufficient reasons for rejecting medical opinion evidence and did not even address the

16   third party evidence which supported plaintiff's claim of disabling syncopal episodes. The

17   vocational expert testified that with episodes causing a loss of consciousness, there would be no

18   jobs available to plaintiff and that no employer would hire a person with an uncontrollable

19   problem that could lead to fainting on the job. AT 91, 95. It is apparent from the record that if

20   the challenged evidence had been properly credited, the ALJ would be required to find plaintiff

21   disabled. Further delay by remanding for the purpose of correcting the ALJ's omissions is not

22   warranted in these circumstances.

23             For the foregoing reasons, this matter will be remanded under sentence four of 42

24   U.S.C. § 405(g) for immediate payment of benefits.

25             Accordingly, IT IS HEREBY ORDERED that:

26             1. Plaintiff's motion for summary judgment (dkt. no. 33) is granted.

7

2.  The Commissioner's cross motion for summary judgment (dkt. no. 35) is denied.

3.  This action is remanded to the Commissioner for immediate payment of benefits.

4.  The Clerk of Court is directed to close this action.

DATED: August 18, 2011.

*John F. Moulds*
U.S. Magistrate Judge

JMM
haynes.ss.rem

8